UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PS FUNDING, INC.,                         )
                                          )
                    Plaintiff,            )          Civil Action No. 3:23-CV-294-CHB
                                          )
v.                                        )
                                          )          **MEMORANDUM OPINION**
WAVY CURTIS SHAIN,                        )          **AND ORDER**
                                          )
                    Defendants.           )

*** *** *** ***

This matter is before the Court on a Motion to Dismiss filed by *pro se* Defendant Wavy

Curtis Shain. [R. 24].[1] Plaintiff PS Funding, Inc., responded in opposition [R. 27], and Shain did

not reply. For the following reasons, the Court will deny the Motion.

**I.      Background**

The following facts are drawn from PS Funding's Complaint. *See generally* [R. 1]. PS

Funding is "a lending institution in the real estate market that provides business purpose loans for

the purchase of single family and multi-family nonowner-occupied homes or the refinancing of

existing home mortgages." *Id.* at ¶ 6. Between May 2019 and March 2020, PS Funding "funded

or purchased loans encumbering nine properties in Staten Island, New York, and Louisville,

Kentucky." *Id.* at ¶ 8.

---

[1] Shain's Motion to Dismiss at docket entry [R. 26] is a duplicate copy of his Motion at docket entry [R. 24]. *See* [R. 24-2, p. 1] ("The Motion to Dismiss, I have previously forwarded to the Court via UPS. However, according to UPS the package was likely lost. I only mention that so that, should the other package show up – at some point – you know it was it was [sic] a duplicate and not an attempt by me to refile the same thing."). Review of both Motions confirms that [R. 26-1 (Memorandum in Support)] is a verbatim copy of [R. 24-3 (Memorandum in Support)]. Accordingly, the Court will, throughout this Order, refer only to the Motion at [R. 24] and its attachments and will deny the Motion at [R. 26] as moot.

According to the Complaint, "Shain made numerous material misrepresentations that induced PS Funding to fund or purchase the nine loans on the Properties." *Id.* at ¶ 23. This included submitting loan application documents "on behalf of a fake borrowing entity, Commonwealth Ventures, Inc., which he created using the stolen identity of a Jonathan Stanford Davies," "on behalf of another fake borrowing agency, Corn Island Properties, Inc., which he created using the stolen identity of a John Charles Bennett," "on behalf of a third fake borrowing agency, AG Real Estate Property Holdings, Inc., using the stolen identities of two separate individuals, Anthony J. Sestito and Michael G. Daragjati," and "on behalf of a fourth fake borrowing agency, Four Bridges Property Holdings, Inc., once again using Sestito and Daragjati's identities." *Id.* at ¶¶ 25–28.

The Complaint further alleges that "Shain created fake title agencies in connection with his fraudulent scheme, which he used to process certain loans for the Properties," that he "falsified Closing Protection Letters and Agent Authorization Letters on behalf of fraudulently created title agencies for certain loans on the Properties," that he "submitted falsified copies of recorded mortgages and mortgage assignments for all the loans except" for two, and that Shain "misrepresented himself as an attorney in submitting loan applications for the loans on the Louisville Properties." *Id.* at ¶¶ 29, 32–34. In addition, Shain allegedly "submitted a falsified copy of a recorded mortgage and assignment . . . from one of the fake title agencies he created, Borders & Borders Title Services, PLC," which was created to "induce PS Funding into believing that the entity" was the "*legitimate* title agency called Borders & Borders, PLC," which "has been operating in the Jefferson County, Kentucky area for many years." *Id.* at ¶¶ 30–31 (emphasis in original).

On September 22, 2020, PS Funding "learned that Shain was arrested on separate charges for fraudulent activity in Michigan." *Id.* at ¶ 35. After learning of Shain's misrepresentations and

foreclosing on two of the properties at issue, on June 8, 2023, PS Funding brought this diversity action. *See generally* [R. 1]. PS Funding asserts claims of fraud (Count I), breach of fiduciary duty (Count II), unjust enrichment (Count III), conversion (Count IV), and breach of contract (Count V) against Shain. *Id.* at ¶¶ 38–72.

On January 22, 2024, Shain moved to dismiss PS Funding's Complaint in its entirety, arguing it fails to state any claim upon which relief may be granted. [R. 24-3, p. 4]. PS Funding responded [R. 27], and Shain did not reply. The matter now stands submitted for the Court's consideration.

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Simply stated, when ruling on a motion to dismiss under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). In doing so, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.   Analysis

At the outset, the Court notes that, because of Shain's *pro se* status, the Court liberally construes his Motion. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The Court addresses each of his arguments, and PS Funding's responses, in turn.

#### A.   Standing

First, Shain broadly asserts that PS Funding's Complaint "fails to establish a connection between PS Funding, the properties, and Shain." [R. 24-3, p. 5]. With this, it appears Shain believes PS Funding lacks standing to bring this action against him. PS Funding similarly interpreted Shain's argument on this issue. *See* [R. 27, pp, 6–7] (citing case law on standing and arguing "PS Funding certainly has a right to bring claims against Shain for his role in misappropriating funds

for his personal benefit" and that "PS Funding has supported the assertion that it has an interest in this lawsuit because it funded and purchased the nine loans at issue from the various lenders").

As a preliminary matter, the Court observes that, on this issue and at other points throughout his Motion, Shain appears to conflate the *Twombly/Iqbal* pleading standards with the more stringent evidentiary standards applied at the summary judgment stage. *See, e.g.*, [R. 24-3, p. 4 n.5] (arguing PS Funding does not "offer any *evidence* to establish that they took assignment of the loans") (emphasis added); *id.* at 5 ("PS Funding offered *no evidence* to establish that they actually provided the Lenders with funds and that those funds were allocated to transactions associated with The Properties.") (emphasis added). At the pleading stage, however, a plaintiff must offer *facts* that render its causes of action *plausible*. *See Allred v. Rodriguez*, 399 F. Supp. 3d 730, 732 (W.D. Tenn. 2019) (quoting *Twombly*, 550 U.S. at 556) ("The plausibility standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].'") (alteration in original). To be sure, at this stage, PS Funding need not have conclusively established its claims with evidentiary support. *See In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 918 (E.D. Mich. 2008) ("*Twombly* did not replace Rule 8(a)'s notice pleading requirement with a new civil procedure that requires plaintiffs to satisfy an evidentiary burden before evidence is developed in a case."). Shain's arguments concerning PS Funding's failure to conclusively establish his liability with evidence therefore must fail.

Turning back to the issue of standing, Shain suggests that, "[b]y failing to explain their connection to the Lenders, PS Funding has failed to establish that Shain bears any legal liability to them." [R. 24-3, p. 5]. As a preliminary matter, assuming Shain is in fact attempting to contest PS Funding's standing to bring this action, his argument is insufficiently developed. It is well settled

that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Even so, Shain's standing argument would also fail on the merits.

"To have standing to sue in federal court, a plaintiff must show that: (1) he suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that his injury will be redressed by the court's decision in his favor." *Kenny v. Bartman*, No. 16-2152, 2017 WL 3613601, at *5 (6th Cir. May 19, 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (cleaned up). Here, the parties appear to dispute only the "causal connection" between PS Funding's loss and Shain's allegedly fraudulent actions, as Shain acknowledges that the Complaint has "established that the Lenders," but not PS Funding, "may have a cause of action against" him. [R. 24-3, p. 5]. Put differently, Shain acknowledges that *someone* may have suffered a concrete, redressable injury based on his actions, but he argues PS Funding has not sufficiently demonstrated it is that someone.

But the Complaint and its exhibits sufficiently draw a causal connection between Shain's alleged actions and PS Funding's injuries. The Complaint alleges that PS Funding "funded or purchased loans encumbering nine properties" that were allegedly fraudulently obtained by Shain. [R. 1 (Complaint), ¶ 8]. PS Funding attached the notes for each of the nine properties as exhibits to its Complaint. *See* [R. 1-1]–[R. 1-9]. Each note includes a clause stating, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *See* [R. 1-1, p. 2]; [R. 1-

2, p. 2]; [R. 1-3, p. 2]; [R. 1-4, p. 2]; [R. 1-5, p. 2]; [R. 1-6, p. 2]; [R. 1-7, p. 2]; [R. 1-8, p. 2]; [R. 1-9, p. 2]. As PS Funding explains in its response, pursuant to these clauses, "it took possession of the notes, replacing the original lenders." [R. 27, p. 6]. This is sufficient to causally connect the losses suffered by PS Funding—the "Note Holder," under the terms of the notes—and the alleged fraudulent actions by Shain in obtaining the notes from the original lenders and failing to repay them. *Kenny*, 2017 WL 3613601, at *5.

For all these reasons, the Court finds that PS Funding has standing to bring this action against Shain. But the Court further notes that Shain's standing argument flies in the face of the undisputed factual basis for his guilty plea in a related criminal action before this Court. *See generally United States v. Wavy Curtis Shain*, 3:23-CR-70-CHB-CHL, [R. 16 (Plea Agreement)]. By way of background, on June 20, 2023, Shain was charged by information with bank fraud and money laundering. *See generally id.* at [R. 1 (Information)]. Relevant here, Shain was charged with, and ultimately pleaded guilty to, "execut[ing] and attempt[ing] to execute a scheme to defraud P.S. Funding, Inc. . . . by attempting to fraudulently refinance real property without the knowledge of the true property owner, conduct sham real estate sales where the buyer and seller were unaware of the real estate transaction, and purchase real estate in the names of other individuals without their knowledge and permission." *Id.* at [R. 1, p. 1]. In Shain's plea agreement with the United States, he agreed to the following factual basis for his plea:

> From on or about July 2019 to August 11, 2020, in Jefferson County, in the Western District of Kentucky, and elsewhere, Wavy Curtis Shain, the defendant, did knowingly execute and attempt to execute a scheme and artifice to defraud financial institutions, P.S. Funding, Inc. and Lima One Capital, LLC, federally insured financial institutions, and to obtain money, funds, and other property owned by and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises. Shain executed and attempted to execute a scheme to defraud P.S. Funding, Inc. and Lima One Capital, LLC by attempting to fraudulently refinance real property without the knowledge and approval of the true property owner, conducted sham real estate sales where the

buyer and seller were unaware of the real estate transactions, [and] purchased real estate in the names of other individuals without their knowledge and permission.

*Id.* at [R. 16 (Plea Agreement), pp. 1–2].

A district court "may take judicial notice at any stage of the proceeding of any fact 'not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Davidson v. Warden, Warren Corr. Inst.*, No. 2:18-CV-00495, 2021 WL 1964487, at *1 (S.D. Ohio May 17, 2021) (quoting Fed. R. Evid. 201). "[F]ederal courts may take judicial notice of proceedings in other courts of record." *Scott v. United States*, No. 2:13-CR-223, 2018 WL 1521792, at *2 (S.D. Ohio Mar. 28, 2018) (citation omitted)); *see also In re Montanari*, No. 12-33189, 2015 WL 603874, at *1 n.3 (E.D. Tenn. Feb. 12, 2015) (taking judicial notice of undisputed facts and documents in defendants' related bankruptcy case). Of course, "[w]hile a court may take judicial notice of the existence of court documents and the proceedings in which those documents were generated, federal courts do not generally take judicial notice of the truth of any statement of fact contained within those documents." *Derrico v. Moore*, No. 1:17CV866, 2019 WL 1876960, at *12 (N.D. Ohio Apr. 25, 2019); *see also Platt v. Bd. of Comm'rs on Grievs. & Discipline of Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018) (citing *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014)).

"In the context of guilty pleas in criminal proceedings, however, federal courts have found it appropriate to take notice, not only of the fact that the guilty plea was entered, but also of the material facts charged in the indictment as well as facts specifically admitted by the defendant as part of his or her plea." *Derrico*, 2019 WL 1876960, at *12 (citing *In re ClassicStar Mare Lease Litigation*, 823 F.Supp.2d 599, 622–23 (E.D. Ky. Sept. 30, 2011) (taking judicial notice of guilty pleas and "those facts to which [the defendants] have admitted"); *Great American Ins. Co.*, 2010

WL 845953 at *18–19 ("The key point is that a guilty plea serves as an admission of the material facts charged in the information or admitted by the Defendant during the plea colloquy. . . The Court will [therefore] take judicial notice of the records of the criminal action, and the facts specifically admitted by the Plummers in their pleas.")). Shain's guilty plea thus severely undercuts his argument that PS Funding lacks standing to bring a civil action against him for the same conduct to which he pleaded guilty in the related criminal action.

For all these reasons, the Court finds that PS Funding has sufficiently shown that it suffered an injury in fact that is likely to be redressed by a decision in its favor and, contrary to Shain's position, that PS Funding has demonstrated a causal connection between its injury and his alleged conduct. PS Funding therefore has standing to sue Shain, and the Court will deny Shain's Motion on that ground.

### B. Fraud

Turning to Shain's arguments concerning PS Funding's substantive claims, he first argues that PS Funding's fraud claim should be dismissed. "Fraud, under Kentucky law, has six elements: '(1) material misrepresentation by the defendant; (2) falsehood; (3) making of a statement known to be false; (4) to induce action by the plaintiff; (5) reliance by the plaintiff; and (6) injury to the plaintiff.'" *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 672 (W.D. Ky. 2022) (quoting *Snowden v. City of Wilmore*, 412 S.W.3d 195, 209 n.10 (Ky. Ct. App. 2013)) (cleaned up). "A party alleging fraud must also meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b)." *Ali v. Allstate Northbrook Indem., Co.*, No. 3:23-CV-108-RGJ, 2024 WL 1199023, at *5 (W.D. Ky. Mar. 20, 2024). "More particularly, [Rule 9] requires the plaintiff: '(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent.'" *Blue Spirits Distilling, L.L.C., v.*

*Luctor International, L.L.C.*, No. 3:23-CV-223-CRS, 2024 WL 2140230, at \*5 (W.D. Ky. May 13, 2024) (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012)).

That said, "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8." *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (citation omitted). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Id.* "'The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud.'" *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 781 (E.D. Mich. 2014) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)).

With respect to PS Funding's fraud claim, Shain contends that PS Funding "fails to show that Shain intended to deceive them," as required under Kentucky law, or that Shain "knew, at the time of the alleged actions, that the Lenders would seek out PS Funding to 'fund or purchase' the loans associated with The Properties." *Id.* at 6–7. In response, PS Funding argues it has "sufficiently plead [sic] a claim for fraud against Shain" with supporting factual allegations, and it points out that Shain even concedes "that the Complaint pleads allegations that 'establish that Shain made false statements to the other lenders and that those lenders relied upon his false statements' and that his 'actions were to induce the lenders to act." [R. 27, p. 9] (citing [R. 26-1, p. 6]). On review of the Complaint, the Court agrees that PS Funding has pleaded a claim for fraud

- 10 -

with sufficient particularity under Rule 9(b), including that Shain "intended to deceive" PS Funding.

Concerning PS Funding's role in the transactions, the Complaint alleges that PS Funding is a "real estate lender" that "funded or purchased" each of the loans at issue, replacing the original lenders. [R. 1 (Complaint), ¶¶ 6–8]. Further, the Complaint attaches the notes, which reflect the borrower's promise to pay the original Lender and its "successors and assigns." *See* [R. 1-1, p. 2]; [R. 1-2, p. 2]; [R. 1-3, p. 2]; [R. 1-4, p. 2]; [R. 1-5, p. 2]; [R. 1-6, p. 2]; [R. 1-7, p. 2]; [R. 1-8, p. 2]; [R. 1-9, p. 2]. Each note also includes a clause stating, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *See* [R. 1-1, p. 2]; [R. 1-2, p. 2]; [R. 1-3, p. 2]; [R. 1-4, p. 2]; [R. 1-5, p. 2]; [R. 1-6, p. 2]; [R. 1-7, p. 2]; [R. 1-8, p. 2]; [R. 1-9, p. 2].

The Complaint further alleges that "Shain made numerous material misrepresentations that induced PS Funding to fund or purchase the nine loans on the Properties." [R. 1 (Complaint), ¶ 23]. These misrepresentations related to the specifics of the loans as well as Shain's creation of fake title agencies, including that "he was a title agent with authority to process loans;" that "his title agencies, including, the Fake Borders & Borders, was a legitimate title agency;" that "the borrowing entities on the loans were legitimate borrowing entities;" that "the principals of the relevant borrowing entities had approved borrowing requests, when in fact Shain had stolen the identities of various individuals and used those identities to create illegitimate borrowing entities;" "that each title policy Shain submitted was legitimate;" "that each Closing Protection Letter Shain submitted was legitimate;" that "Shain was an attorney with authority to submit certain loan requests;" that " the recorded mortgages and mortgage assignments that Shain provided were legitimate;" that "the Agent Authorization Letters that Shain submitted were legitimate; and that

"the bank accounts tied to the borrowing entities were legitimate." [R. 1 (Complaint), ¶ 39]. In doing so, PS Funding has specified numerous, precise fraudulent representations made by Shain, satisfying the first two requirements of Rule 9(b)'s heightened pleading standard. *Blue Spirits Distilling*, 2024 WL 2140230, at *5.

As for the third requirement, although PS Funding's Complaint does not outline the specific "when and where" of each individual alleged statement, *Blue Spirits Distilling*, 2024 WL 2140230, at *5, the notes for each property, which PS Funding claims were executed based on Shain's misrepresentations, are each dated. *See* [R. 1-1]–[R. 1-9]. The Court can thus reasonably infer that Shain's alleged false statements were made around the time the notes were executed. *See Robards v. BLK Out Transp.*, 623 F. Supp. 3d 810, 820 (W.D. Ky. 2022) (plaintiffs satisfied time and place heightened pleading requirement for Rule 9(b) where they pleaded alleged fraudulent statements regarding wages "were made at the time of hiring"); *Benedettini Cabinets, L.P. v. Sherwin-Williams Co.*, No. 1:22-CV-00737, 2023 WL 6278813, at *6 (N.D. Ohio Sept. 27, 2023) (plaintiffs pleaded fraudulent representation claim with sufficient particularity when alleging statements were made sometime within month-long period "in October 2017").

Lastly, the Complaint alleges that "Shain knew that the material representations were false, as it was his plan to obtain financing for these properties so that he could keep the funds for his personal use," and that Shain made these representations "for the express purpose of inducing PS Funding to rely thereon, and to subsequently fund the loans at issue." *Id.* at ¶¶ 45, 46. The Complaint further states that "PS Funding did, in fact, rely on Shain's material representations, and it provided funding for the nine loans at issue pursuant to its belief that Shain and Shain's companies were legitimate companies," which resulted in PS Funding suffering "damages of over $3,000,000 in distributions made for loans that Shain improperly and unlawfully kept for his own

personal use," including PS Funding's "interest in those loans [being] materially and directly affected by unrecorded mortgages, no record of deed transfers to the borrowing entities, and unsatisfied prior mortgages on the properties." *Id.* at ¶¶ 47, 48. These statements sufficiently explain what made Shain's representations fraudulent. *Blue Spirits Distilling*, 2024 WL 2140230, at *5.

Based on these allegations, which the Court must accept as true at this stage, PS Funding has plausibly alleged a claim for fraud under Kentucky law. And contrary to Shain's position that PS Funding failed to show he intended to deceive it, the Complaint plainly states that "Shain knew that the material representations were false, as it was his plan to obtain financing for these properties so that he could keep the funds for his personal use" and "for the express purpose of inducing PS Funding to rely thereon, and to subsequently fund the loans at issue." [R. 1 (Complaint), ¶¶ 45, 46]. As the Court has already explained above, this is sufficient, at the pleading stage, to "raise a reasonable expectation that discovery will reveal evidence" to support PS Funding's fraud claim, including Shain's allegedly deceptive intent. *Twombly*, 550 U.S. at 556. PS Funding need not "show" anything more concerning Shain's intent at this stage. The Court will therefore deny Shain's Motion to Dismiss with respect to PS Funding's fraud claim.

### C. Breach of Fiduciary Duty

Next, Shain argues that PS Funding's breach of fiduciary duty claim should be dismissed. "Under Kentucky law, the basic elements of a breach-of-fiduciary-duty claim are (1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 775 (E.D. Ky. 2019) (citing *Baptist Physicians Lexington, Inc. v. New Lexington Clinic*, P.S.C., 436 S.W.3d 189, 193 (Ky. 2013); *Seeger Enters., Inc. v. Town &*

*Cty. Bank & Trust Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017)) (internal quotation marks omitted).

On this claim, Shain suggests that "PS Funding has asserted no evidence whatsoever that they and Shain had a business relationship - much less that Shain owed them a fiduciary duty." [R. 24-3, p. 7]. As previously stated, however, at the pleading stage, a plaintiff must offer *facts* that render its causes of action plausible but need not conclusively establish its claims with evidentiary support. *See Twombly*, 550 U.S. at 556; *Allred*, 399 F. Supp. 3d at 732; *In re Ford Motor Co.*, 590 F. Supp. 2d at 918. For its part, PS Funding primarily argues that Shain breached his fiduciary duty as a title agent by misappropriating loan funds for his personal benefit. [R. 27, p. 10]. PS Funding points out that its Complaint "alleges that Shain fell within the scope of the duty to act honestly and in good faith in his role as 'title agent and in his other respective roles in the transactions,' and that he owed 'PS Funding a fiduciary duty to use the funds respective to the purposes proposed in the submissions for each property.'" *Id.* (quoting [R. 1 (Complaint), ¶¶ 50–51]).

As stated, a plaintiff alleging breach of fiduciary duty must first establish the existence of a fiduciary relationship. *Arnold*, 392 F. Supp. 3d at 775. "Under Kentucky law, a fiduciary relationship exists where a relationship is 'founded on trust or confidence reposed by one person in the integrity and fidelity of another *and* which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking.'" *Invesco Institutional (N.A.), Inc. v. Johnson*, 500 F. Supp. 2d 701, 709 (W.D. Ky. 2007) (quoting *ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 715 (6th Cir. 2005)) (emphasis added); *see also Crestwood Farm Bloodstock v. Everest Stables*, Inc., 751 F.3d 434, 442 (6th Cir. 2014) (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr.,*

*Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) ("Fiduciary relationships 'necessarily involve an undertaking in which a duty is created in one person to act primarily for another's benefit.'").

Here, PS Funding's Complaint alleges that Shain "misrepresented himself as an attorney in submitting loan applications for the loans on the Louisville Properties," and misrepresented that "he was a title agent with authority to process loans," and that "his title agencies . . . [were] legitimate title agenc[ies]." [R. 1 (Complaint), ¶¶ 34, 39]. Of course, it is well settled that "the relationship of attorney-client is one fiduciary in nature," and "the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest." *Crescent Mortg. Co. v. Freeman*, No. CV 6:20-159-KKC-HAI, 2022 WL 988356, at *6 (E.D. Ky. Mar. 31, 2022) (quoting *Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013)). And "[d]espite the lack of a formal attorney-client relationship, an attorney may owe fiduciary duties to a party who places faith and confidence in him with his consent." *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 475 (W.D. Mich. 1997). Moreover, although neither party has provided case law concerning the fiduciary nature of a title agent or title company's relationship with a lender specifically (and the Court could locate none), it is at least plausible, at this stage, that Shain owed PS Funding a fiduciary duty in one or more of his roles in the various mortgage transactions at issue.

Having plausibly alleged a fiduciary relationship, PS Funding's Complaint also outlines the multitude of ways Shain allegedly breached his fiduciary duties. The Complaint alleges that Shain "created fake title agencies in connection with his fraudulent scheme, which he used to process certain loans for the Properties." [R. 1 (Complaint), ¶ 29]. It further alleges that the "borrowing entities Shain created were tied to individuals whose identities Shain had stolen." *Id.* at ¶ 41. In addition, according to the Complaint, "certain title policies, Closing Protection Letters,

- 15 -

Agent Authorization Letters, recorded mortgages, and mortgage assignments that Shain provided were fake." *Id.* at ¶ 42. Shain's concerted actions "induc[ed] PS Funding to rely thereon, and to subsequently fund the loans at issue." *Id.* at ¶ 46. The Complaint alleges that Shain then "intentionally and purposefully misappropriated funding provided by PS Funding and received by the title agency that he created for his own personal use." *Id.* at ¶ 51. Accepting these allegations as true, as the Court must at the pleading stage, PS Funding has plausibly alleged a claim for breach of fiduciary duty by Shain. Accordingly, the Court will deny Shain's motion on this claim.

### D. Unjust Enrichment

Shain next seeks dismissal of PS Funding's unjust enrichment claim. "In Kentucky, to sustain a claim for unjust enrichment a plaintiff must establish three elements: '(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value.'" *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 973 (E.D. Ky. 2019) (citing *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017); *Furlong Dev. Co. v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39–40 (Ky. 2016)). "Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit." *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011) (collecting cases). "In other words, the plaintiff must show that he conferred a benefit directly upon defendant[]." *Simpson*, 397 F. Supp. 3d at 973 (citing *Lewis v. Jones*, No. 6:17-CV-38, 2018 WL 5043773, at *5 (E.D. Ky. Oct. 17, 2018)) (cleaned up).

Shain argues that PS Funding's unjust enrichment claim fails because "there is no allegation that PS Funding conferred a benefit to Shain" directly but, rather, "[a]ny benefit

extended by PS Funding was extended to the Lenders, who then did what they saw fit with that benefit." *Id.* at 8. But review of PS Funding's Complaint indicates otherwise. The Complaint explicitly states that "PS Funding had an agreement with Shain, acting as a title agent and representative of the Fake Borders & Borders (which turned out to be a fraudulent entity), to distribute funds for the loans secured by properties in Staten Island, New York, and Louisville, Kentucky." [R. 1 (Complaint), ¶ 55]. The Complaint continues: "PS Funding relied on Shain's material representations that the funds would be used for their stated purposes, to PS Funding's detriment." *Id.* at ¶ 56. The Complaint further alleges that "Shain knew or should have known that PS Funding was relying on Shain's representations in distributing the loan funds" and that "Shain personally enriched himself at the expense of PS Funding and others, using PS Funding's resources for personal monetary gain rather than for the purpose of refinancing existing loans as represented, to PS Funding's detriment." *Id.* at ¶¶ 57–58. Lastly, the Complaint provides that Shain has "retain[ed] the benefits conferred upon him" by PS Funding, and that allowing him to continue to retain them "would be inequitable, unconscionable, and unjust." *Id.* at ¶ 59.

To the extent Shain contests the factual assertions within PS Funding's Complaint, which indicate that PS Funding conferred a benefit directly to him, the Court cannot, at this stage, resolve such a dispute. *Sunjoy Indus. Grp., Ltd. v. Permasteel, Inc.*, No. 2:22-CV-1896, 2023 WL 406211, at *4 (S.D. Ohio Jan. 25, 2023) ("[T]o the extent there is a factual dispute [between the parties], it should not be resolved at the pleading stage."). As the Court has continually emphasized throughout this Order, "'[a]t the motion to dismiss stage, courts are bound to accept the well-pleaded allegations of a complaint as true and to draw inferences and resolve ambiguities in a plaintiff's favor.'" *Richardson v. Baylor & Backus, CPAs*, No. 2:18-CV-00200-DCLC, 2020 WL 6994842, at *2 (E.D. Tenn. Mar. 9, 2020) (quoting *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th

Cir. 2014)). Because, contrary to Shain's argument, PS Funding has sufficiently pleaded each element of a claim for unjust enrichment under Kentucky law, the Court will deny Shain's Motion with respect to that claim.

### E. Conversion

Next, Shain urges the Court to dismiss PS Funding's conversation claim. Under Kentucky law, the elements of a claim for conversion are:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Allstate Northbrook*, 2024 WL 1199023, at *6 (citing *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014) (quoting *Ky. Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005)).

PS Funding's Complaint plausibly alleges each of these elements. First, the Complaint alleges that "PS Funding had legal title to the money it eventually provided as funding for Shain's scam projects." [R. 1 (Complaint), ¶ 61]. Second, "PS Funding had both actual possession and the right to possess the funds when they were transferred to Shain." *Id.* at ¶ 62. Third, "Shain exercised dominion over the funds for his own benefit and enjoyment." *Id.* at ¶ 63. Fourth, "Shain intended to interfere with PS Funding's possession and use of the relevant funds." *Id.* at ¶ 64. Fifth, "PS Funding made objections to Shain but was ignored." *Id.* at ¶ 65. Sixth, "Shain's wrongful taking of the funds constituted the legal cause of PS Funding's loss of property." *Id.* at ¶ 66. Seventh and

finally, "PS Funding suffered damages in excess of $3,000,000 plus interest, costs, and attorney fees." *Id.* at ¶ 67.

Still, with respect to PS Funding's conversion claim, Shain contends that he "had no knowledge as to PS Funding's involvement with" the lenders from which Shain obtained loans, so "he certainly cannot be held accountable for the promises or representations that the Lender's [sic] might have made to induce PS Funding to 'fund' the loans associated with The Properties." [R. 24-3, p. 10]. But PS Funding characterizes Shain's claim that he "never submitted a loan request to PS Funding, nor did he ever request 'funds' from them," [R. 24-3, p. 10], as "erroneous." [R. 27, p. 12]. The Complaint does not specify to whom Shain submitted his loan requests, but it does offer specific factual allegations concerning their submission. *See* [R. 1 (Complaint), ¶ 25] ("Shain submitted loan application documents . . . on behalf of a fake borrowing entity, Commonwealth Ventures, Inc., which he created using the stolen identity of a Jonathan Stanford Davies."); *id.* at ¶ 26 ("Shain submitted loan application documents . . . on behalf of another fake borrowing agency, Corn Island Properties, Inc., which he created using the stolen identity of a John Charles Bennett."); *id.* at ¶ 27 ("Shain submitted loan application documents . . . on behalf of a third fake borrowing agency, AG Real Estate Property Holdings, Inc., using the stolen identities of two separate individuals, Anthony J. Sestito and Michael G. Daragjati."); *id.* at ¶ 28 ("Shain submitted loan application documents . . . on behalf of a fourth fake borrowing agency, Four Bridges Property Holdings, Inc., once again using Sestito and Daragjati's identities."). Drawing all reasonable inferences in PS Holding's favor, as the non-moving party, which the Court is required to do when considering a motion to dismiss under Rule 12(b)(6), its claim that Shain did in fact submit some or all of these loan documents to PS Funding directly is at least plausible.

But even if Shain did not obtain the funds directly from PS Funding, other courts have concluded that a third party's involvement does not defeat the intent requirement for a conversion claim, as it matters only that the defendant "*intended the act* which resulted in their control over the [subject property]." *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Bowling Green Recycling LLC*, No. 1:15-CV-00024-GNS-HBB, 2017 WL 6508359, at *3 (W.D. Ky. Dec. 19, 2017) (citing *Jasper v. Blair*, 492 S.W.3d 579, 583 (Ky. Ct. App. 2016)) (emphasis added). This is so even where the third party wrongfully converted the plaintiff's property, and the defendant later received it.

In *National Union Fire*, a court in this district determined that the intent element for conversion was met "as a matter of law" where a third party stole the plaintiff's copper, and the third party then sold the copper to the defendant. 2017 WL 6508359, at *3. The court explained that, because the defendants "admitted they intended to purchase the copper from the thief, . . . and that they exercised further control over the copper by reselling it," that was sufficient to show that the defendants "intended to interfere with the plaintiff's possession" of the copper, even though the defendants did not steal the copper directly from the plaintiffs. *Id.* Similarly, in *Jasper*, a defendant was found liable for conversion after he purchased a diamond ring from a third party who stole the ring from the plaintiff. 492 S.W.3d at 583.

Here, PS Funding claims Shain submitted fraudulent loan documents that induced PS Funding to fund Shain's loans. As previously explained above, the Complaint alleges that PS Funding is a "real estate lender" that "funded or purchased" each of the loans at issue, replacing the original lenders, [R. 1 (Complaint), ¶¶ 6–8], and attaches the notes, which reflect the borrower's promise to pay the original Lender and its "successors and assigns." *See* [R. 1-1, p. 2]; [R. 1-2, p. 2]; [R. 1-3, p. 2]; [R. 1-4, p. 2]; [R. 1-5, p. 2]; [R. 1-6, p. 2]; [R. 1-7, p. 2]; [R. 1-8, p.

2]; [R. 1-9, p. 2]. And each note also includes a clause stating, "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" *See* [R. 1-1, p. 2]; [R. 1-2, p. 2]; [R. 1-3, p. 2]; [R. 1-4, p. 2]; [R. 1-5, p. 2]; [R. 1-6, p. 2]; [R. 1-7, p. 2]; [R. 1-8, p. 2]; [R. 1-9, p. 2]. Thus, whether Shain submitted the documents to PS Funding directly or through a third party, PS Funding's Complaint still makes plausible that Shain "intended the act[s]," which, as PS Funding summarizes, "included the submission of loan applications, documents using stolen identities, the creation of fake borrowing and title agencies, the submission of falsified recorded mortgages and assignments as well as Closing Protection Letters and Agent Authorization Letters, and fraudulently misrepresenting himself as an attorney," [R. 27, p. 7], "which resulted in [his] control over [the subject property]." *National Union Fire*, 2017 WL 6508359, at *3. Having plausibly alleged all the elements of conversion, [R. 1 (Complaint), ¶¶ 61–67], and for all these reasons, Shain's arguments for dismissal of this claim are unavailing, and the Court will deny his Motion to Dismiss with respect to PS Funding's conversion claim.

### F.  Breach of Contract

Lastly, Shain moves for dismissal of PS Funding's breach of contract claim. "A breach of contract claim under Kentucky law generally requires proof of three elements: '1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract.'" *Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893, 903–04 (W.D. Ky. 2020) (quoting *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)).

On this issue, Shain simply offers that PS Funding's breach of contract claim fails because "there is no valid and enforceable contract between Shain and PS Funding," and thus, according to Shane, "there can be no breach." *Id.* at 10. Again, however, at the pleading stage, the Court

determines only whether PS Funding has asserted sufficient facts that, accepted as true, could establish Shain's liability. The Court cannot, at this early stage, determine the validity or enforceability of any contracts between the parties. For its part, PS Funding argues that its Complaint "alleged that it funded or purchased the loans and thus, became the owner of the promissory notes" and that these allegations "establish[] the elements of a breach of contract claim sufficient to overcome Shain's Federal 12(b)(6) Motion." [R. 27, p. 12]. On review of the Complaint, the Court agrees.

The Complaint alleges that PS Funding "entered into multiple contractual agreements with Shain (acting as another individual) in the form of promissory notes" and that, "[p]ursuant to those promissory notes and other agreements, Shain agreed to use the funds for the purpose of paying off home mortgages." [R. 1 (Complaint), ¶¶ 10–21, 69–70]. It further alleges that "Shain materially breached his contractual obligations when he used the funds for personal use rather than for the purpose for which they were issued," and that "PS Funding suffered damages in excess of $3,000,000 as a direct and proximate result of Shain's material breach of contract." *Id.* at ¶¶ 71–72. These factual allegations are sufficient to allow the Court to plausibly infer that the parties entered into one or more contractual agreements and that Shain breached those agreements, causing PS Funding to incur damages. PS Funding therefore has stated a viable claim for relief, and the Court will deny Shain's Motion to Dismiss with respect to the breach of contract claim.

## IV.    Conclusion

For all the foregoing reasons, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Wavy Curtis Shain's Motion to Dismiss [**R. 24**] is **DENIED**.

2. Defendant Wavy Curtis Shain's Motion to Dismiss [**R. 26**] is **DENIED as moot**.

This the 27th day of June, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc:    Counsel of record
       Defendant Wavy Curtis Shain, *pro se*